UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

UNITED STATES OF AMERICA,

v.

RANDALL KIMBRELL

Case No.   5:04-cr-43-Oc-10GRJ

## REPORT AND RECOMMENDATION[1]

Pending before the Court is Defendant's Motion To Suppress Defendant's Statement Of February 24, 2005 (Doc. 39) to which the United States has filed a memorandum in opposition. (Doc. 48.) On March 17, 2005 the Court held an evidentiary hearing. For the reasons discussed below  Defendant's Motion To Suppress is due to be **DENIED.**

### I.  Introduction and Testimony

Defendant requests that the statements he made to F.B.I. Special Agent Terry M. Wetmore, on February 24, 2005, during the administration of a polygraph examination should be suppressed because the statements were not made freely and voluntarily and thus were made in violation of the Defendant's Fifth Amendment rights.

By way of background, on January 18, 2005 Defendant's expert, Richard Kiefer, conducted a polygraph examination of Defendant. The Defendant wanted to use the

---

[1] Specific written objections may be filed in accordance with 28 U.S.C. §636, and Rule 6.02, Local Rules, M.D. Fla., within ten (10) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

polygraph examination in this case[2] and, accordingly, offered voluntarily to submit to a polygraph examination administered by an F.B.I. polygraph examiner. Agent Wetmore was assigned by the F.B.I. to conduct the polygraph examination. According to the Defendant, during the interview of Defendant he made several statements to Agent Wetmore that were not inculpatory but rather were inconsistent with previous statements he had made to the F.B.I. While the statements were not inculpatory the Defendant wishes to exclude them from trial because of his concern the Government will attempt to use the statements to show inconsistencies between prior exculpatory statements made by the Defendant at the time the search warrant was executed and the statements made at the polygraph.

The United States presented the testimony of Special Agent Wetmore at the hearing. On February 24, 2005 the Defendant and his counsel went to the Ocala office of the F.B.I. and met with Special Agent Martin S. Eagan and Special Agent Wetmore. Before the polygraph examination began, Agent Wetmore and Agent Eagan met with Defendant's counsel, in a separate conference room outside the presence of Defendant, to discuss the examination. Defendant's counsel asked Agent Wetmore whether he would be discussing the facts of the case with the Defendant and was advised by Agent Wetmore that he would have to discuss the facts of the case with the Defendant in order to conduct a proper polygraph examination. Defendant's counsel

---

[2] In order to introduce polygraph evidence under Eleventh Circuit precedent the defendant must satisfy the following three threshold conditions: (1) adequate notice that expert testimony will be offered must be given to the opposing party, (2) the opposing party must be given a reasonable opportunity to have its own expert administer a test covering substantially the same questions, and (3) polygraph evidence must satisfy the requirements of the Federal Rules of Evidence. <u>United States v. Piccinonna</u>, 885 F.2d 1529, 1535-36 (11th Cir. 1989).

also inquired whether Agent Wetmore would be documenting the results of the discussions with the Defendant. Agent Wetmore advised Defendant's counsel that he would be documenting the results of the discussions with the Defendant if the Defendant gave Agent Wetmore new information or different information from what had previously been provided. According to Agent Wetmore, Defendant's counsel also asked Agent Wetmore if any documented statements would be introduced in court and Agent Wetmore told Defendant's counsel that the statements would be used at trial. At the conclusion of the meeting, Defendant's counsel left the F.B.I. office and returned to his office and Agent Wetmore escorted the Defendant to the room where the examination was to be conducted.

The pre-test interview of the Defendant began at approximately 10:22 that morning. After explaining the procedures to the Defendant and before Agent Wetmore began the interview, the Defendant was presented with a form entitled "Consent to Interview With Polygraph,"[3] which Agent Wetmore read aloud to the Defendant and Defendant signed at 10:36 a.m. The consent form expressly included advice to the Defendant that: (1) he had the right to refuse to take the polygraph test, (2) if he agreed to take the test, he had the right to stop the test at any time, and (3) if he agreed to take the test, he had the right to refuse to answer any individual questions. The consent form signed by Defendant also provided, under the section entitled "waiver and consent," that the Defendant acknowledged understanding his rights and confirmed that he voluntarily agreed to be examined by means of the polygraph during the interview. Lastly, in the

---

[3] Government Ex. "1".

consent form the Defendant represented that no threats or promises were used against the Defendant to obtain his consent to the use of the polygraph.[4]

Before conducting the polygraph examination, Agent Wetmore conducted a pre-test interview which is a necessary component of a polygraph examination. The pre-test interview allows the examiner to lay a foundation as part of establishing the comparison control questions.

The first question Agent Wetmore posed to the Defendant was whether the Defendant had ever been betrayed. The Defendant responded that he had. The Defendant then provided Agent Wetmore with a long and detailed explanation concerning a friend, named Adam Kucharski, who allegedly attempted to molest the Defendant's sister and who Defendant alleged was the first person who had shown child pornography to the Defendant.

Agent Wetmore also testified that during the interview he thought the Defendant appeared somewhat tired. Consequently, Agent Wetmore adjourned the interview to permit the Defendant to go to the bathroom and refresh himself. After resuming the interview Agent Wetmore asked the Defendant the open-ended question "Why are we here today?" The Defendant then proceeded to tell Agent Wetmore another long and detailed explanation concerning an individual named, Gerald Erambert, who was taken in by Defendant's family, lived in their home and worked for the Defendant's mother in a shop that she owned. The explanation concerning Erambert was new information that Agent Wetmore was not aware of from prior statements made by the Defendant. After

---

[4] In accordance with F.B.I. policy neither the interview nor the actual polygraph were recorded. This fact is also reflected on the consent form signed by the Defendant.

taking another break, and in order to clarify Defendant's responses so that the test could be administered, Agent Wetmore then asked the Defendant about Defendant's involvement in loading on his computer versions of "MIRC" - a type of file server software. Defendant admitted to Agent Wetmore that he had lied when he was interviewed by the F.B.I. on the day the search warrant was executed about whether he or Kucharski had loaded the file server programs on the computer. Lastly, before beginning the test Agent Wetmore asked the Defendant about a file server referred to as "MYSTICK," which was one of the names of the file servers identified in this case. The Defendant provided Agent Wetmore with an explanation that suggested Erambert had access to this file through passwords. While none of this information is expressly inculpatory, the explanations provided by the Defendant suggested new - and possibly - inconsistent explanations with regard to the child pornography on Defendant's computer or the transmission of the images to or from the Defendant's computer.

Agent Wetmore then began to administer the actual polygraph test. According to Agent Wetmore, he attempted to run two charts[5] on the Defendant but he was not able to obtain a valid chart from which any comparisons could be made because the Defendant allegedly was using countermeasures. Accordingly, the test was terminated and after confronting the Defendant with regard to the use of countermeasures - which the Defendant denied - the Defendant left the offices.

At the hearing the Defendant elected to testify. According to the Defendant, he considered the questioning by Agent Wetmore to be an "interrogation" and not merely

---

[5] A "chart" is the generic reference to the graph of autonomic responses of the examinee that are recorded by the polygraph instrument.

an interview. The Defendant testified that after he answered a question, if Agent Wetmore did not like the response, Agent Wetmore would prompt the Defendant for a more detailed answer by rephrasing the question and telling the Defendant that the Defendant "was dancing around the subject." The Defendant described Agent Wetmore's demeanor during the pre-test interview as "passive-aggressive" and then his demeanor after the test had been terminated as more hostile. The Defendant testified that he cooperated with Agent Wetmore because he "didn't want to spoil [his] chances of giving a polygraph test."

However, on cross examination the Defendant readily conceded that he voluntarily signed the consent form and agreed to answer Agent Wetmore's questions. Defendant admitted that Agent Wetmore allowed the Defendant to take several breaks during the interview. Most notably, during the approximate three and a half hours[6] of the interview and testing Defendant never requested to stop the interview and he never requested an opportunity to telephone his attorney or for permission to leave the offices. The Defendant readily acknowledged that he had the right to terminate the test at any time. According to the Defendant, the only reason he did not terminate the test was because he knew if he did so he would not be permitted to use in this case the polygraph examination administered by Mr. Kiefer, Defendant's own expert.

---

[6] Although, Defendant suggests in his motion that the interview lasted five hours the evidence discloses otherwise. The consent form was signed at 10:36 and the second test was completed at 2:05. According to Agent Wetmore he talked to the Defendant for about four minutes after that. Therefore, not even counting the several breaks that lasted ten minutes or more the total elapsed time was approximately three and a half hours or less rather than five hours.

## II.  DISCUSSION

The sole ground raised by the Defendant in support of his request to suppress the statements he made in the pre-test interview is based on the Fifth Amendment.[7] Defendant argues that because the statements made by the him were given as a *quid pro quo* for the admissibility of the polygraph administered by Defendant's own expert, the statements were not given freely and voluntarily.

In determining whether a statement has been given freely and voluntarily the Court is required to examine the totality of the circumstances.[8] The touchstone for voluntariness is whether the defendant's will was overcome and the statements were a result of free will.[9]  "Among the factors" the Court will "consider are the defendant's intelligence, the length of his detention, the nature of the interrogation, the use of any physical force against him, or the use of any promises or inducements by police."[10] In

---

[7] Although, Defendant's motion to suppress only mentions the Fifth Amendment as basis for suppression, during the course of the hearing the Court inquired as to whether the Defendant was also raising a Sixth Amendment argument in support of the request to suppress in view of the fact that there were statements made by the Defendant after the interview was terminated. Because these statements were made without counsel - and at a time arguably outside the scope of the necessary questioning for the polygraph - Defendant's counsel confirmed that he also was relying upon the Sixth Amendment. However, the Court concludes that there are no Sixth Amendment concerns to address because the Government expressly represented at the beginning of the hearing that it would not introduce in its case in chief any statements made by the Defendant post-test because these statements directly concerned the issue of the polygraph, which the Government agreed should not be brought to the attention of the jury. Accordingly, because the Government will not be introducing any of these post-test statements the Court does not need to address the Sixth Amendment. Moreover, there are no Sixth Amendment issues regarding the pre-test statements in view of the fact that the Defendant voluntarily attended the polygraph with his attorney, who elected to return to his office and Defendant never requested further permission to speak with his lawyer.

[8] Schneckloth v Bustamante, 412 U.S. 218, 226 (1973).

[9] Haynes v. Washington, 373 U.S. 503, 513-14 (1963).

[10] Hubbard v. Haley, 317 F.3d 1245, 1253 (11th Cir. 2003)(*citing* Schenckloth v. Bustamante, 412 U.S. 218, 226 (1973)).

order for the conduct of law enforcement to be deemed so coercive that a statement is rendered involuntary, the questioning normally would involve "subjecting the accused to an exhaustively long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession."[11]

Here, there was no evidence presented by the Defendant suggesting that the statements he made were involuntary or were not made freely and knowingly. To the contrary, the following compelling evidence amply supports the conclusion that the Defendant knew what he was doing and voluntarily made the statements without any coercion by law enforcement.

First, the Defendant was represented by counsel and appeared at the F.B.I. offices with his lawyer, who had an opportunity to discuss the procedures and protocols with the F.B.I. examiner. Secondly, before the pre-test questioning began the Defendant was expressly advised that he had the right to refuse to take the test, the right to stop the test at any time and the right to refuse to answer any individual questions. Agent Wetmore orally advised the Defendant of these rights and confirmed that Defendant understood these rights by having the Defendant read and execute the "Consent to Interview With Polygraph" form before the interview commenced. Thirdly, the Defendant was afforded the opportunity to take breaks during the interview to insure that he was alert during the process. Fourth, the Defendant was not restrained nor prevented at any point in time from leaving the room or leaving the F.B.I. premises. Lastly, although the Defendant characterized the questioning as "interrogation" there was no suggestion

---

[11] United States v. Mendoza-Cecelia, 963 F.2d 1467, 1475 (11th Cir.)(*quoting* Miller v. Dugger, 838 F.2d 1530, 1536 (11th Cir. 1988)), *cert denied*, 113 S.Ct. 436 (1992).

during the pre-test interview that Agent Wetmore raised his voice, physically intimidated the Defendant or did anything whatsoever that would rise to the level of being considered coercive. The only suggestion of hostility by Defendant relates to Agent Wetmore's alleged demeanor when he confronted the Defendant concerning the use of countermeasures. Although Agent Wetmore characterized his post test demeanor differently, the Court does not need to resolve this because the Government does not intend to introduce any post-test statements made by the Defendant.

Defendant's sole challenge to the admissibility of his statements is based upon his contention that his statements were not voluntary because he was compelled to answer the questions as a *quid pro quo* so that he could introduce his own polygraph at trial. While there is no question that the only reason the Defendant agreed to the interview with the F.B.I and submit to a polygraph examination was so that he could introduce his own polygraph test at trial, that motive has little to do with whether the statements he made were or were not voluntary. The examination of the voluntary nature of a Defendant's statements made to law enforcement for Fifth Amendment purposes focuses on whether the conduct of law enforcement under the circumstances overbore the Defendant's free will so that the statements were not the product of the Defendant's rational intellect and free will. A defendant's will is overborne if the statement is not a "product of an essentially free and unconstrained choice by its maker."[12]

Here, there is no doubt that the Defendant made an unconstrained and informed

---

[12] *See,* Columbe v. Connecticut, 367 U.S. 568, 602 (1961).

choice - with the advice of counsel - before the interview and test and voluntarily choose to continue with the interview and test throughout the process with full knowledge that he had the right at any time to terminate the process - albeit a decision that would prevent him from being able to attempt to introduce his own polygraph results. There was no evidence that the Government represented or promised to the Defendant or to Defendant's counsel that the Government would agree to the introduction of Defendant's own polygraph test in exchange for Defendant submitting to an interview and polygraph examination by the F.B.I. To the contrary the Defendant was clearly advised that he had every right to refuse the test and not participate. Simply because the Defendant made the choice voluntarily to speak with the F.B.I. so that he could possibly gain a benefit - which has not materialized - does not transform the statements he freely made to the F.B.I. into involuntary statements.[13]

Accordingly, the Court concludes that the statements made by the Defendant to Agent Wetmore in the pre-test interview on February 24, 2005 were given freely and voluntarily and did not violate Defendant's rights under the Fifth Amendment.

---

[13] *See,* United States v. Richardson, 690 F.Supp. 71, 72 (D.D.C. 1988)(motion to suppress statements made by the Defendant to the F.B.I. incident to a voluntary polygraph denied because there was no evidence that the Defendant was coerced into coming to the F.B.I. offices nor any evidence of coercion during the interview.)

### III. RECOMMENDATION

For the reasons discussed above, it is respectfully **RECOMMENDED** that the Defendant's Motion To Suppress Defendant's Statement Of February 24, 2005 be **DENIED**.

**IN CHAMBERS** in Ocala, Florida on this 11th day of May, 2005.

*/s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

Copies to:
    Honorable Wm. Terrell Hodges
    Senior United States District Judge

    United States (Henry)
    Federal Public Defender (Carey)